John POWERS, Plaintiff–Appellant,

v.

CHICAGO TRANSIT AUTHORITY, et al., Defendants–Appellees.

No. 88–1512.

United States Court of Appeals, Seventh Circuit.

Submitted April 14, 1988.

Decided May 24, 1988.

John L. Gubbins, Kenneth N. Flaxman, P.C., Chicago, Ill., for plaintiff-appellant.

Barry S. Alberts, Schiff Hardin & Waite, Chicago, Ill., Catherine Masters, Epstein, Alana L. Helverson, Colette Holt, for defendants-appellees.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

John Powers, employed by the Chicago Transit Authority as an attorney, believes that the CTA has decided to ease out its white attorneys to make way for minorities. He filed suit under 42 U.S.C. § 1983 contending that he had been harassed, suspended, and demoted on account of his race. Powers sought to discover memoranda written by Joyce Hughes, the General Attorney of the CTA, reflecting a plan of reorganization. The CTA resisted, in part on the ground of attorney-client privilege. While the district court was considering the parties' positions, Powers unveiled a memorandum from Hughes to the Chairman of the Law and Employee Relations committee of the CTA's Board of Directors discussing reorganization of the legal staff. The memo observed, among other things, that the civil service system was an obstacle to reorganization and emphasized the importance of building "a paper record which will substantiate cause for discharge or demotion" of employees.

Powers took this memo as a smoking gun; the defendants treat it as ordinary advice from one bureaucrat to another to follow the traditional C.Y.A. strategy, privileged to boot. The CTA moved for a protective order. Its entitlement depended in part on whether the CTA had treated the document as privileged legal advice. If the CTA disseminated the memo freely, it is unprivileged; if the memo was circulated only to top management (and had been filched by Powers's source or revealed in violation of a duty of confidence), it might be privileged. Powers believes that it is an administrative rather than a legal memorandum, not prepared in connection with litigation. Without deciding whether the memo could be privileged under any circumstances, the district judge ordered Powers to reveal how or from whom he obtained it. Powers responded by saying that he had promised his source confidentiality, and he refused to spill the beans even *in camera.* He asserted a "confidential-informant-in-litigation" privilege. The district judge informed Powers that there is none; Powers still refused to tell. The district court was not amused and held Powers in contempt, levying a fine of $150 per day starting March 8, 1988, until Powers revealed how he came by the memorandum. The CTA's request for a protective order remains pending; meanwhile Powers

has widely distributed the memo, which has received extensive publicity.

Powers filed an appeal and sought a stay of the accrual of fines. He maintains that the court should create a confidential-source privilege; he also contends that the district judge abused his discretion by ordering disclosure without an adequate showing of need for the information. The CTA has moved to dismiss the appeal for want of jurisdiction. We grant this motion and deny Powers's alternative request for mandamus.

■ We have jurisdiction only if the order amercing Powers $150 per day is a "final decision" under 28 U.S.C. § 1291. A line of cases dating to 1880 has it that an order holding a party in civil contempt is not a "final decision" under § 1291. *Fox v. Capital Co.*, 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); *Doyle v. London Guarantee & Accident Co.*, 204 U.S. 599, 27 S.Ct. 313, 51 L.Ed. 641 (1907); *In re Christensen Engineering Co.*, 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072 (1904) (dictum); *Hayes v. Fischer*, 102 U.S. (12 Otto) 121, 26 L.Ed. 95 (1880). The adjudication of contempt is no more final than the discovery order it enforces. The party may comply and on appeal from the final judgment assign the need to do so as error; or the party may refuse to comply, let the fine mount up, and on appeal from the final judgment assign the citation as error, recouping or avoiding the sanction. The mounting fines put the party to a hard choice, for if he guesses wrong the sum due at the end of the case may be large, but discovery may be expensive for other reasons too. It is not unusual in commercial litigation for compliance with discovery requests to cost more than a million dollars, yet discovery orders are not on that account reviewable. Many modern commentators believe that the rule postponing review until final judgment is unduly harsh. E.g., Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15 Federal Practice and Procedure § 3917 (1976). We said in 1983, however, that the rule is "too well established to be changed by us." *In re Witness before the Special October 1981 Grand Jury*, 722

F.2d 349, 351 (7th Cir.1983). The intervening five years have made the rule that much better established.

■ A sanction in criminal contempt is appealable forthwith on the theory that it is the terminating order of a separate proceeding, the criminal prosecution. E.g., *Bray v. United States*, 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975). That is a venerable rule, dating from *Ex parte Kearney*, 20 U.S. (7 Wheat.) 38, 5 L.Ed. 391 (1822) (a case that declined to review the criminal contempt, however, because there was then no appellate review in criminal cases). Powers seeks to benefit from that rule by contending that the fine in his case is "quasi-criminal". The "quasi" must signify that Powers knows this sanction to be civil but wishes it were criminal. A sanction designed to induce compliance, which runs prospectively and may be avoided by compliance, is civil. *Hicks v. Feiock*, — U.S. — – —, 108 S.Ct. 1423, 1428–31, 99 L.Ed.2d 721 (1988) (collecting cases). Powers may comply and avoid further penalty any time he pleases. The sums due for earlier disobedience cannot be recouped (unless the decision is reversed on appeal), but a day in jail may not be reclaimed either—and confinement until the person complies with an order is the classic civil contempt sanction.

■ Powers also insists that the adjudication is a "collateral order" immediately appealable under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). An order is collateral and appealable only to the extent it is a "final decision" separate from the merits and unreviewable on appeal. See generally *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, — U.S. —, 108 S.Ct. 1133, 1136–38, 99 L.Ed.2d 296 (1988). We agree with Powers to the extent he observes that the label "civil contempt" does not make an order nonappealable if it otherwise satisfies the requirements of appellate jurisdiction. *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 716–17 (7th Cir.1987); *In re Establishment Inspection of Skil Corp.*, 846 F.2d 1127 (7th Cir.1988). The point of cases such as *Fox* and *Doyle*,

however, is that the issues involved in an order holding a person in civil contempt for failure to supply information in discovery are reviewable on appeal from the final decision, and hence are not appealable sooner. They hold that the kind of order entered in this case is not appealable under § 1291. We cannot avoid *Fox* and *Doyle* by invoking a somewhat different terminology.

Several courts of appeals have taken jurisdiction of appeals by parties when the district court rejected an assertion of privilege. E.g., *Southern Methodist University Ass'n v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir.1979); *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370 (10th Cir.1978); *Cates v. LTV Aerospace Corp.*, 480 F.2d 620 (5th Cir.1973). These courts observe that if the party complies with the order and reveals the information, the cat is out of the bag and the privilege is lost. The Second Circuit has adhered to the rule of *Fox* and *Doyle*—rightly so, we believe. *In re Attorney General*, 596 F.2d 58 (2d Cir.1979); *IBM Corp. v. United States*, 493 F.2d 112, 115 (2d Cir.1973). The essential point of *Fox* and *Doyle* is that the party may decline to comply and receive a full adjudication at the end of the case—which may come quickly, for the absence of the information may lead to the entry of an adverse judgment, permitting appeal. And if the party does comply, revealing information that should have been treated as privileged, the appeal from the final judgment may lead to a reversal on the ground that the information was not properly admitted.

A privilege is just a reason not to comply with the request for information. Failure to honor a valid claim of privilege may create loss or embarrassment outside of court, but erroneous denials of asserted privileges are not unique in their potential to cause loss. The rejection of other reasons to restrict discovery—for example, the unnecessary burden or expense of complying with a request—also creates the danger of irreparable loss. If a party is ordered to produce information needlessly, and complies, the expense of doing so is incurred once and for all; it cannot be recouped whether or not the aggrieved party pre-

vails on appeal. So long as *Fox* and *Doyle* define the meaning of a "final decision" under § 1291, an order holding a party in civil contempt for failure to reveal information to the district court is not appealable.

One can make a case for the revision of that rule, for the difference between civil and criminal contempt is formal rather than substantive, and civil contempt may create the greater pressure to surrender the information. A party put to a choice between his privileges and his liberty (or purse) ought to have some prompt avenue of review, cf. *Maness v. Meyers*, 419 U.S. 449, 460–61, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975), and district judges ought not be able to determine the reviewability of their own decisions by selecting between criminal and civil contempt. The Supreme Court has modified the rule so that the President may appeal without awaiting a criminal contempt citation. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). It has declined to bend the rule to the breaking point, however, and it is not the part of an inferior court to revise a rule established by the Supreme Court. A belief that the distinction between civil and criminal contempt needs rethinking does not justify failure to toe that line while it exists. See *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982).

Powers requests mandamus in the alternative. We issued a writ of mandamus in *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir.1970), affirmed by an equally divided Court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971), another case involving a claim of privilege and an adjudication of civil contempt. Since then, however, the Supreme Court has held, see *Kerr v. United States District Court*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), that only the most extraordinary circumstances amounting to usurpation of power permit the issuance of that writ to control decisions affecting discovery. See also *Gulfstream*, 108 S.Ct. at 1143–44.

 Is ours an extraordinary case, one in which the district court has usurped

authority? There are reasons to doubt whether the district court has exercised discretion soundly. Unless the memorandum would be privileged if it had been held confidential within the CTA, the method of its acquisition is irrelevant to this case, although it may be relevant to some other. The district court ordered Powers to reveal his source without first determining that the information in the memorandum is presumptively privileged and that the method of acquisition spells the difference between privilege and no privilege. Without ascertaining the relevance of Powers's sources, the district court was not in the best position to determine whether the source should be revealed—without regard to any "confidential-informant-in-litigation" privilege. District courts have a responsibility to protect sensitive information in discovery, where the utility of that information is less than the injury its disclosure may do, even if the information is not technically privileged. See *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1159–62 (7th Cir.1984) (en banc), reversed in part on other grounds, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Moreover, the court did not explain why it turned first to fines rather than the other tools at its disposal. Powers is the plaintiff, and a court may deal with a plaintiff's recalcitrance by dismissing the case or forbidding use of the information (it would be easy to bar Powers from referring to the memorandum unless he reveals his sources), two sanctions available under FED.R.CIV.P. 37(b)(2). An adjudication in contempt ought to be the last rather than the first recourse in a discovery dispute. These reasons may well persuade this court to reverse the sanction when at last there is a final judgment.

But error, if this be error, is not usurpation of power. Rule 37(b)(2)(D) lists contempt as an available sanction. The district court is entitled to be suspicious of Powers's refusal to submit the information for review *in camera*, which suggests that something out of the ordinary is afoot. A litigant may not, by refusing a simple request (here, for *in camera* review), propel a court into a decision on a much more complex matter (here, the request to create a novel privilege). The district court was entitled to do *something* in response to Powers's recalcitrance, and our queasiness about what, exactly, the court did does not make the case mete for mandamus.

The appeal is dismissed for want of jurisdiction, and the alternative petition for a writ of mandamus is denied.