**In re JOINT EASTERN & SOUTHERN DISTRICTS ASBESTOS LITIGATION.**

**In the Matter of JOHNS–MANVILLE CORPORATION, et al., Debtors.**

**Bernadine K. FINDLEY, as Executrix of the Estate of Hilliard Findley, et al., Plaintiffs,**

v.

**Donald M. BLINKEN, et al., Defendants.**

**Appeal of James WALKER.**

**Nos. 92–3568, 93–3217.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1993.

Decided May 2, 1994.

James R. Wylder, Bloomington, IL, William J. Harte (argued), Harte & Associates, Chicago, IL, for James Walker.

Jeffrey P. Lennard (argued), Steven H. Frankel, Christopher Q. King, Gregory R. Naron, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Manville Personal Injury Settlement Trust.

James Walker, pro se.

Before BAUER and RIPPLE, Circuit Judges, and REYNOLDS, District Judge.[*]

RIPPLE, Circuit Judge.

Attorney James Walker was held in contempt in consolidated bankruptcy proceedings in the United States District Courts for the Southern and Eastern Districts of New York. He was ordered to pay a monetary fine. That judgment of contempt was registered in the Central District of Illinois and proceedings were commenced to collect on that judgment. Mr. Walker resisted, principally through a motion for relief under Rule 60(b)(4) of the Federal Rules of Civil Procedure and through a motion to quash the citation to discover assets. Unsuccessful in these efforts, he subsequently filed a notice of appeal. This matter is before us in appeal No. 92–3568.

Pursuant to the order of the district court, an examination to discover assets was later conducted before a United States Magistrate Judge. Mr. Walker refused to answer certain questions at this proceeding; the district court accordingly held him in civil contempt and imposed upon him a conditional sentence of imprisonment. Mr. Walker appeals this contempt ruling in appeal No. 93–3217. For the reasons that follow, we dismiss both appeals for want of jurisdiction.

## I

## BACKGROUND

The matter before us is the consolidation of two appeals which are tangential to the asbestos litigation conducted jointly by the United States District Courts for the Southern and Eastern Districts of New York (the "Rendering Courts").[1] Mr. Walker represented certain plaintiffs in that matter. During the course of that litigation, the Render-

---

[*] Hon. John W. Reynolds, United States District Judge for the Eastern District of Wisconsin, is sitting by designation.

[1] A brief summary of the background to this litigation may be helpful. For a fuller account, see the district court opinions in the case now before us, 800 F.Supp. 643 (C.D.Ill.1992) and 830 F.Supp. 1153 (C.D.Ill.1993), and the underlying bankruptcy litigation, *In re Joint Eastern & Southern Dists. Asbestos Litig.*, 129 B.R. 710 (E. & S.D.N.Y.1991), *vacated*, 982 F.2d 721 (2d Cir. 1992), *modified on reh'g*, 993 F.2d 7 (2d Cir. 1993). After Johns–Manville Corporation filed for bankruptcy protection in 1982, the Manville Trust was created as part of the Corporation's reorganization plan, to satisfy Manville's asbestos-related liabilities. Approved in 1988, the Plan established procedures for the filing of claims by asbestos claimants. Attorney James Walker represented some of those claimants. When the Trust experienced substantial cash shortages because of the escalating costs of litigation, the reference of the Manville bankruptcy was partially withdrawn; Judge Jack B. Weinstein of the United States District Court for the Eastern District of New York was named to supervise the Plan and to protect the Trust assets. A Special Master confirmed that very limited assets were available. As a result, on November 23, 1990, the Rendering Courts enjoined all pending litigation against the Trust to halt further dissipation of Trust assets. Nevertheless, Mr. Walker caused citations to discover assets to be issued on December 31, 1990 to Bankers Trust Company, custodian of the Trust's assets. Bankers Trust moved to quash the citations.

On February 13, 1991, the Rendering Courts entered another order, certifying a mandatory, non-opt-out class of claimants and staying the execution or enforcement of judgments against the Trust's assets. However, Mr. Walker pursued and was granted *ex parte* judgments against Bankers Trust on February 25, 1991 in the Circuit Court of McLean County, Illinois. On April 1, 1991, after discovering the entry of those judgments, Bankers Trust moved to vacate them. In addition, on April 19, 1991, the Rendering Courts entered a show cause order against Mr. Walker. When Mr. Walker failed to appear at the hearing, the Rendering Courts held Mr. Walker in civil contempt for knowingly violating the November 23, 1990 and February 13, 1991 Orders, and directed him to dismiss the citation proceedings and to move to vacate the judgments against Bankers Trust. On May 7, 1991, the McLean County Circuit Court granted Bankers Trust's motion to vacate the judgment against it.

The Rendering Courts referred to Magistrate Judge John L. Caden the determination whether sanctions should be imposed and, if so, in what amount. Again Mr. Walker failed to appear at the sanctions hearing. The court assessed against Mr. Walker a daily fine of $1000 in addition to the costs, expenses and attorney's fees incurred by the Manville Trust and Bankers Trust. By Orders of May 13 and June 10, 1991, the Magistrate Judge assessed the sanctions; on September 3, 1991, the district court entered judgment ordering that Manville Trust recover $81,655.01 plus interest from Mr. Walker. He neither objected to any sanction order nor paid any of the amounts assessed. Manville Trust then commenced these proceedings in the District Court for the Central District of Illinois to collect the sanctions.

ing Courts held Mr. Walker in contempt for knowingly violating two injunctions. The issue of imposing sanctions was referred to a Magistrate Judge and, on September 3, 1991, the Rendering Courts entered judgment, ordering that Mr. Walker be sanctioned in the amount of $81,655.01 plus interest. Mr. Walker did not appeal that order to the United States Court of Appeals for the Second Circuit.

On October 21, 1991, Manville Trust ("the Trust"), whose assets are supervised by the Rendering Courts in the asbestos litigation, brought proceedings to collect the contempt sanctions imposed on Mr. Walker. The Trust registered the New York judgment in the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. § 1963.[2] Pursuant to Rule 69(a)[3] of the Federal Rules of Civil Procedure, it also filed a motion in that court for an order of citation to discover Mr. Walker's assets. On the same date, the citation was issued. On November 18, 1991, Mr. Walker filed motions to quash the citation and to dismiss the supplementary proceedings, and a request pursuant to Rule 60(b)(4) of the Federal Rules of Civil

Procedure for determination that the registered foreign judgment is void.[4]

On August 26, 1992, the district court denied, without prejudice to refile in the Rendering Courts, Mr. Walker's several challenges to the validity of the Rendering Courts' underlying contempt sanctions judgment.[5] See In re Joint Eastern & Southern Dists. Asbestos Litig., 800 F.Supp. 643 (C.D.Ill.1992). It noted that the Rendering Courts had previously addressed the issues raised by Mr. Walker, and found that "both judicial comity and the pursuit of efficient judicial administration dictate that Walker's opposition to the enforcement of judgment based on subject matter jurisdiction, personal jurisdiction, the restrictions of the Anti-Injunction Act and the actions of Magistrate Judge Caden be referred to the rendering Courts for review." Id. at 646. Because these efforts were denied without prejudice, Mr. Walker had the option of refiling in the Rendering Courts.

The district court then denied with prejudice Mr. Walker's motion to quash the citation. Mr. Walker contended that the citation failed to state expressly that the citation hearing would be conducted by the rules

2. This section reads in pertinent part:

A judgment in an action for the recovery of money or property entered in any district court or in the Court of International Trade may be registered by filing a certified copy of such judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.... A judgment so registered shall have the same effect as a judgment of the district court where registered and may be enforced in like manner.

3. Fed.R.Civ.P. 69(a) states:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the man-

ner provided by the practice of the state in which the district court is held.

4. Fed.R.Civ.P. 60(b)(4) reads in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void.

5. The court addressed five arguments presented by Mr. Walker:

(1) The Rendering Courts' Orders of November 23, 1990 and February 13, 1991 are void for lack of subject matter jurisdiction.
(2) Those orders are void for lack of personal jurisdiction.
(3) Those orders violate the Anti-Injunction Act.
(4) The September 3, 1991 Judgment is invalid because Mr. Walker failed to consent to those proceedings before the magistrate judge pursuant to 28 U.S.C. § 636(c).
(5) The Citation to Discover Assets is invalid due to its failure to conform to the requirements of Illinois Supreme Court Rule 277(e).
See 800 F.Supp. at 645.

governing depositions, as required by Illinois Supreme Court Rule 277(e).[6] The district court disagreed: It stated, "It is clear from the face of the citation that the hearing would occur in accordance with the rules governing depositions." *Id.* at 647. The district court then set the date for Mr. Walker's citation hearing.

After numerous delays, Mr. Walker appeared with counsel for citation examination before a magistrate judge in the Central District of Illinois on August 3, 1993. He refused, however, to answer any questions, and he therefore was held in contempt.[7] On September 14, 1993, following a hearing, the district court determined that Mr. Walker's refusal to answer questions warranted the imposition of sanctions. *In re Joint Eastern & Southern Dists. Asbestos Litig.*, 830 F.Supp. 1153, 1155 (C.D.Ill.1993). After considering Mr. Walker's past conduct,[8] the court concluded that "the appropriate sanction would be imprisonment conditioned on cooperation with the Manville Trust in the discovery process." *Id.* Consequently the court issued an order holding Mr. Walker in civil contempt for failure to comply with the citation and remanding him into custody until he should decide to cooperate with the Manville Trust concerning the citation to discover his assets. *Id.* at 1156. The court further indicated its willingness to stay the confinement order upon the posting of a supersedeas bond within 48 hours. Mr. Walker did file the supersedeas bond.[9] He has not, as far as the record before us reveals, refiled his claims concerning the underlying judgment in the Rendering Courts. He now appeals to this court both orders of the United States District Court for the Central District of Illinois.

## II

## ANALYSIS

From the beginning of this case, we have questioned our jurisdiction to review this appeal.[10] Courts of appeals have jurisdiction

---

**6.** Illinois Supreme Court Rule 277(e) states:

The examination of the judgment debtor, third party, or other witnesses shall be before the court, or, if the court so orders, before an officer authorized to administer oaths designated by the court, unless the judgment creditor elects, by so indicating in the citation or subpoena served or by requesting the court to so order, to conduct all or a part of the hearing by deposition as provided by the rules of this court for discovery depositions.

**7.** Mr. Walker explained to the court that his refusal to answer the questions was based on his desire to create grounds for contempt which, in his view, would permit him to seek review in this court of the underlying judgment. For Mr. Walker, the "underlying judgment" has been at times the judgment of contempt sanctions entered against him by the Rendering Courts and registered in the Central District of Illinois and at other times the Rendering Courts' judgments enjoining all pending and future litigation against the Manville Trust.

**8.** Mr. Walker has been found in contempt of both the federal and Illinois courts on other occasions. *See, e.g., Castillo v. St. Paul Fire & Marine Ins. Co.,* 938 F.2d 776 (7th Cir.1991) (contempt for unprofessional conduct in connection with discovery; sanction affirmed); *Castillo,* 828 F.Supp. 594 (C.D.Ill.1992) (one-year suspension from practice of law issued November 1992); *see also Kilpatrick v. First Church of the Nazarene,* 182 Ill.App.3d 461, 130 Ill.Dec. 925, 538 N.E.2d 136 (1989) (Walker's trial tactics not condoned, but sanction vacated); *Mau v. North Am. Asbestos Corp.,* 156 Ill.App.3d 926, 109 Ill.Dec. 273, 509 N.E.2d 1112 (1987) (vacating contempt order because trial court's imposition of conditions concerning order of witnesses at trial was abuse of discretion); *Rowley v. Rousseau,* 81 Ill.App.3d 193, 36 Ill.Dec. 465, 400 N.E.2d 1045, 1048 (1980) (affirming contempt ruling of trial court).

**9.** On September 16, 1993, the district court approved Mr. Walker's supersedeas bond for $100,-000. The document filed with the posting of the bond acknowledged the appeal to this court on September 14, 1993, and stated the underlying conditions:

Therefore, the condition of this $100,000 bond shall be for the prosecution of the appeal and the appearance of James Walker to submit to the Marshal to be taken into custody or to answer questions in compliance with the Citation to Discover Assets and the Court's order of September 14, 1993, in the event the order is affirmed or the appeal dismissed. If the judgments which are the subject of this action are satisfied or if the order of September 14, 1993, is reversed, then this obligation shall be void, and the $100,000 bond shall be returned to James Walker.

**10.** On October 27, 1992, after the filing of the first appeal, we ordered the parties to submit memoranda stating why the appeal should not be

over appeals from all *final decisions* of district courts. 28 U.S.C. § 1291. The judgment of a district court is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). We now shall turn to an examination of whether we have the authority to hear either of these appeals.

### A. Appeal No. 92–3568

#### 1.

The first appeal, No. 92–3568, brings to this court the decisions of the district court of August 26, 1992. In essence, these decisions denied without prejudice Mr. Walker's motion for dismissal of the judgment of contempt entered against him by the Rendering Courts. As we have noted earlier, this denial was without prejudice to its being renewed before the Rendering Courts. The district court also determined that the citation to discover assets was without procedural infirmity and need not be quashed.

 At the outset, we set forth the fundamental principles that our earlier cases establish for determining whether an order entered in a postjudgment proceeding may be appealed to this court. Perhaps the most fundamental of these principles, rooted firmly in our cases, is that a postjudgment proceeding, for purposes of appeal, must be viewed as a separate lawsuit from the action which produced the underlying judgment. Consequently, the requirements of finality must be met without reference to that underlying judgment. *Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221, 1224 (7th Cir.1993); *SEC v. Suter,* 832 F.2d 988, 990 (7th Cir. 1987); *King v. Ionization Int'l, Inc.,* 825 F.2d 1180, 1184–85 (7th Cir.1987). A postjudgment order is final, then, if it disposes completely of the issues raised. Accordingly, we have joined every other circuit [11] to have considered the question in holding that, as a general rule, an order authorizing discovery

in aid of execution of judgment is not appealable until the end of the case. *Central States Southeast & Southwest Areas Pension Fund v. Express Freight Lines, Inc.,* 971 F.2d 5, 6 (7th Cir.1992). The denial of a motion to quash the citation proceeding simply lets the proceeding continue and therefore is not final or appealable. *See id.* (explaining that the denial of a postjudgment discovery order is appealable but that the granting of the discovery is not). Applying the general rule that, when determining the appealability of a postjudgment collection proceeding, the measure of finality is assessed not at the entry of the underlying judgment but at the end of the separate proceeding to execute or enforce that judgment for the payment of money, we stated:

> A postjudgment order might seem final by definition because the judgment is already behind it. But there are judgments and there are judgments.... A contested collection proceeding will end in a judgment or series of judgments granting supplementary relief to the plaintiff. *The judgment that concluded the collection proceeding is the judgment from which the defendant can appeal.*

*Central States,* 971 F.2d at 6 (emphasis added) (citations omitted).

Since deciding *Central States,* this court has revisited the issue and suggested that there might be circumstances in which a discovery order, like one emanating from a citation hearing, might be final and appealable:

> Often the sole object of such a proceeding is discovery of the judgment debtor's assets, since once they are discovered the judgment creditor may levy on them without obtaining a further court order. Ill. Rev.Stat. ch. 110, ¶ 2–1501. And an order that is the terminus of the case in the district court is final for purposes of appeal even if it is not a conventional judgment— even if it commences a proceeding in another forum.

---

dismissed for lack of jurisdiction. Without resolving the question, we allowed the parties to proceed to briefing, and later consolidated the two appeals for argument and disposition. Orders of February 11 and October 19, 1993.

11. *Richmark Corp. v. Timber Falling Consultants, Inc.,* 937 F.2d 1444, 1449 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992); *Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.,* 680 F.2d 743, 746 (11th Cir.1982).

*Resolution Trust,* 994 F.2d at 1225. The facts of *Resolution Trust* afforded the court no opportunity to delineate the contours to this possible exception to the general rule. This case also affords no occasion for its concrete application. The circumstances surrounding the ruling of the district court make it clear that the court did not regard its ruling as a final disposition of the matter before it. Indeed, in its subsequent order, the district court recognized explicitly the lack of finality of this earlier ruling when it referred to this appeal as "unripe." *In re Eastern & Southern Dists. Asbestos Litig.,* 830 F.Supp. 1153, 1154 (C.D.Ill.1993); *cf. Rosser v. Chrysler Corp.,* 864 F.2d 1299, 1304 (7th Cir.1988) (holding that there is no appellate jurisdiction "where the district court contemplates further proceedings"). Indeed, Mr. Walker's subsequent actions make it clear that he did not consider the district court's denial of the motion to quash to be the last word. He subsequently filed a motion to set off, in which he requested that the sanctions be paid out of client funds in another case which had allegedly been assigned to him. We also must note the possibility that there would be additional proceedings with respect to the motion for relief under Rule 60(b)(4), if Mr. Walker decided to pursue the matter in the Rendering Courts. This contingency added another factor of uncertainty that made the decision of the district court on August 26, 1992 anything but a final disposition of the Manville Trust's effort to enforce the judgment it had registered in the district court.

### 2.

We must also explore the possibility that the part of the district court's decision that denied the motion for relief under Rule 60(b)(4) is severable from the remainder of its decision and appealable in its own right. The district court denied the motion without prejudice to its renewal in the Rendering Courts. It ruled that the issue of the validity of the Rendering Court's judgment was most appropriately addressed, as a matter of comity and sound judicial administration, by the court that had rendered the judgment. The district court pointed out that these considerations were especially important in the case of a contempt judgment:

> In the instant case, Walker seeks to oppose, in a foreign jurisdiction, the consequences of behavior which the rendering Courts found sufficient to warrant a finding of contempt and the imposition of sanctions. This court finds that in the absence of glaring irregularities, comity demands that it respect such a decision.

800 F.Supp. at 646–47. The district court further noted that the Rendering Courts had addressed thoroughly both of the contentions raised by Mr. Walker in his Rule 60(b)(4) motion.

■ Whether Mr. Walker can appeal the decision of the district court to defer to the Rendering Courts with respect to the Rule 60(b)(4) motion is an issue that this circuit has confronted only once, in *Fuhrman v. Livaditis,* 611 F.2d 203 (7th Cir.1979). On that occasion, the court simply followed, without discussion, the earlier holding of the United States Court of Appeals for the Second Circuit in *United States ex rel. Mosher Steel Co. v. Fluor Corp.,* 436 F.2d 383 (2d Cir.1970), *cert. denied,* 402 U.S. 945, 91 S.Ct. 1623, 29 L.Ed.2d 114 (1971). In *Fluor,* the Second Circuit determined that such a decision was appealable because it was analogous to the decision of a district court to dismiss an action on the grounds of forum non conveniens. In reaching this decision, the Second Circuit acknowledged that the common law doctrine of forum non conveniens has been substantially replaced by transfer jurisdiction under 28 U.S.C. § 1404(a).[12] *Fluor,* 436 F.2d at 385 n. 1. The court also acknowledged that the practical effect of denial of the motion at issue was similar to the denial of the nonappealable decision to deny transfer under § 1404(a). *Id.* at 384. Nevertheless, without further explanation, the court determined that "the more compelling analogy" was to the appealable decision to grant a

---

12. This section reads:
 (a) For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought.

dismissal on the ground of forum non conveniens.[13] *Id.*

■■■ We find ourselves in respectful disagreement with this decision. As we see it, the most appropriate analogy is to the transfer statute, rather than to the common law doctrine of forum non conveniens.[14] Several considerations lead us to this conclusion. First, we believe that the decision to defer to the court of rendition with respect to the disposition of a Rule 60(b)(4) motion is guided by essentially the same criteria that guide a decision to grant a transfer under § 1404(a). Under that statute, a district court may transfer a case to another federal district or division "where it might have been brought" if the court determines that such a transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice." While modeled to some degree on the doctrine of forum non conveniens, this statutory transfer jurisdiction was clearly intended to vest in the transferor court more discretion than it had been permitted to exercise under the common law doctrine because "the harshest result of the application of the old doctrine . . . , dismissal of the action, was eliminated by the provision." *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *see also Piper Aircraft Co. v. Renyo,* 454 U.S. 235, 253, 102 S.Ct. 252, 264–65, 70 L.Ed.2d 419 (1981). As the Supreme Court put it in *Van Dusen v. Barrack,* "[s]ection 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (footnote omitted).

Similar considerations must guide the determination of the district court in its decision not to entertain a Rule 60(b)(4) attack on a judgment originally rendered in another district but now registered on its own docket for purposes of enforcement.[15] Indeed, in *Fuhrman,* 611 F.2d at 204–05, we noted the policy considerations that ought to guide a registration court's decision to defer to the rendering court. We noted that considerations of convenience, comity and efficient judicial administration were the controlling

13. The grant of a motion to dismiss on the common law grounds of forum non conveniens is appealable. *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 849 n. 4 (5th Cir.1990); *see also Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43 (3d Cir.1988) (assuming dismissal to be appealable and reviewing district court decision on merits).

14. It is well settled that the decision of the district court to grant a transfer motion is not subject to appeal as a final judgment. *See, e.g., Nascone v. Spudnuts, Inc.,* 735 F.2d 763, 772–73 (3d Cir.1984); *D'Ippolito v. American Oil Co.,* 401 F.2d 764, 764–65 (2d Cir.1968) (per curiam); 15A Charles A. Wright et al., *Federal Practice and Procedure* § 3914.12, at 718 (1992).

15. We note that the authority of the registration court to entertain a motion under Rule 60(b)(4) appears to be well established. As one of the leading treatises notes succinctly:

Judicial administration usually suffers when a court is said to lack power or jurisdiction. And we believe that would be true if the court of registration is held to lack power or jurisdiction to grant relief under 60(b).

7 James W. Moore, et al., *Moore's Federal Practice* ¶ 60.28[1], at 60–311 (2d ed. 1993). More important, it is clear from the long history of cases that the registration court's jurisdiction over 60(b) motions has not been placed in doubt. Indeed, the caselaw establishes that the registration court does not lack the power to decide on the validity of the foreign judgment, but must exercise its ability to make that determination with sound discretion. It has long been held that a district court enforcing a foreign judgment has a broad discretionary ability to choose whether to hear a Rule 60(b)(4) motion filed against the foreign judgment.

A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity. When, in an enforcement proceeding, the validity of the judgment is questioned on this ground, the enforcing court has the inherent power to void the judgment, whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of a foreign jurisdiction, unless inquiry into the matter is barred by the principles of res judicata. *Baldwin v. Iowa State Traveling Men's Assoc.,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). While the original court's jurisdiction is presumptively valid, if the issue of jurisdiction has not previously been litigated it may be raised in the enforcing court. *Adam v. Saenger,* 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938). *Covington Indus. v. Resintex A.G.,* 629 F.2d 730, 732 (2d Cir.1980) (holding that Rule 60(b)(4) may be invoked in the registration court to obtain relief from foreign default judgment attacked as void for lack of personal jurisdiction).

factors.[16] *Id.* at 204–05. These factors closely approximate the factors that govern the decision to transfer a case from one district or division to another under 28 U.S.C. § 1404(a).

More fundamentally, the decision to defer to the rendering court when its judgment is attacked in the registration court is most realistically viewed as a decision of sound judicial administration rather than as a juridical act having the consequences of finality that require further review by an appellate tribunal. It is a necessary concomitant of the expedited system of judgment registration provided by 28 U.S.C. § 1963. The decision to defer to the rendering forum deprives no litigant of the opportunity to have the claim fairly adjudicated by a federal tribunal. It merely assures that judicial resources are correctly allocated and that the litigant is not able to shop for a more favorable forum that may be more disposed to his claim because it is less familiar with it.

Finally, in determining whether this decision of the district court to defer to the rendering courts is within our appellate jurisdiction, we must take into account that, since the decision of the Second Circuit in *Fluor,* we have received a good deal of additional guidance on the matter of "finality" from the Supreme Court of the United States. On several occasions in recent years, the Court has emphasized that allowing interlocutory appeals comes at a significant price. Resolution of the principal litigation is delayed, often significantly. The authority of the district court to supervise litigation is undermined, and the trial court loses the firm hand that is necessary to assure that the litigation

stays on track, even when one of the parties would prefer a more leisurely resolution or no resolution at all. *See Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 380, 107 S.Ct. 1177, 1184, 94 L.Ed.2d 389 (1987); *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 430–31, 105 S.Ct. 2757, 2760–61, 86 L.Ed.2d 340 (1985); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). Both of these considerations are of significant importance in the situation before us. The task of the district court in this case was to give effect to the congressional mandate that animates 28 U.S.C. § 1963, the statute that permits the judgment of one district to be registered and enforced in another. The purpose of this statute is "to simplify and facilitate collection on valid judgments." *Coleman v. Patterson,* 57 F.R.D. 146, 149 (S.D.N.Y.1972). As the Senate Judiciary Committee noted while considering an amendment to the statute in 1954:

> [R]egistration of judgments in other districts is a modern legal device. It assists judgment creditors by making it possible for them to pursue the property of a debtor in satisfaction of a judgment by the ordinary process of levying execution on a judgment in any district where the judgment is registered. The result is that both creditors and debtors are relieved of the additional cost and harassment of further litigation which would otherwise be required by way of an action on the judgment in a district other than that where the judgment was originally obtained.

S.Rep. No. 1917, 83rd Cong., 2d Sess. (1954),

---

**16.** In *Fuhrman,* we concluded that, although a rigid rule was not appropriate, permitting the rendering court to address the challenge because of its familiarity with the underlying issue was "logical." *Id.* at 205. Therefore, even though it is clear that the registration court has the authority to consider the motion, such a motion for relief from judgment is usually brought in the rendering court. *See Credit Alliance Corp. v. Campbell,* 845 F.2d 725, 727 (7th Cir.1988); *Indian Head Nat'l Bank v. Brunelle,* 689 F.2d 245, 249 (1st Cir.1982); *Covington,* 629 F.2d at 733; *Fluor,* 436 F.2d at 385. The First Circuit has suggested two classes of cases that can present exceptions to that general rule: those alleging that the judgment is void for lack of jurisdiction

or because of fraud, accident or mistake, and those asserting grounds that would support an independent equitable action. *Indian Head,* 689 F.2d at 249 n. 8 & 249–50. In those categories, according to *Indian Head,* the registration court may directly exercise its equitable jurisdiction. However, according to the First Circuit, if the 60(b) motion does not fall into those narrow categories, the registration court's determination of the matter would be an inappropriate extension of these exceptions to the general rule. *Id.* at 251. The Second Circuit also has recognized that it can be appropriate for the registration court to grant relief in the case of a default judgment which is void for want of personal jurisdiction. *See Covington,* 629 F.2d at 733–34.

reprinted in *1954 U.S.C.C.A.N. 3142, 3142.*[17]

In our view, therefore, it is difficult to see how this legislative purpose can be effectuated if the enforcement process is retarded by appellate proceedings to review the decision of the registration court to defer to the forum that knows the case best and where, in all likelihood, the merit of that collateral attack can be reviewed most expeditiously.[18]

### 3.

■ Finally, we note that, although it is possible for a court of appeals to review a discovery order through a writ of mandamus, that device is reserved for extraordinary circumstances. *Gulfstream Aerospace Corp. v. Mayacamus Corp.,* 485 U.S. 271, 289, 108 S.Ct. 1133, 1143–44, 99 L.Ed.2d 296 (1988). Among the criteria that the petitioner must meet are a showing that the relief requested cannot be achieved in any other way and that he has a clear and indisputable right to that relief. *Kerr v. United States Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *Matter of Sandahl,* 980 F.2d 1118, 1119 (7th Cir.1992); *see also Powers v. Chicago Transit Auth.,* 846 F.2d 1139, 1142–43 (7th Cir.1988) (discussing application of criteria in discovery context). There can be little question that these stringent criteria are not met in this case. Certainly, Mr. Walker has not established a clear and indisputable right to the relief that he seeks. The decision of the district court in Illinois to defer to the Rendering Courts was a common-sense decision that is consonant with the usual approach of district courts asked to review the judgment of another district now registered for purposes of collection. As the district court pointed out, its decision in this case was especially appropriate because the registered judgment had been entered by the Rendering Court as a result of a contempt proceeding and because it also appeared that the contentions of Mr. Walker had already been considered by that court. There is no basis that would justify the invocation of our mandamus power.

### B. *Appeal No. 93–3217*

■ We now consider whether the district court's second order, the civil contempt ruling against Mr. Walker, is appealable. We suggested in *Central States* that a person ordered to produce material in a post-judgment discovery proceeding, "if desperate for an immediate appeal, can disobey the order and appeal the resulting judgment for *criminal contempt.*" *Id.* (emphasis added).[19] In this instance, however, we are dealing with a judgment of civil contempt. We have held "that an order of civil contempt enforcing a discovery order in supplementary proceedings is ... unappealable." *Resolution Trust Corp. v. Ruggiero,* 987 F.2d 420, 421 (7th Cir.1993) (per curiam). This rule is based on the established principle that an order holding a party in civil contempt is not a final decision for purposes of § 1291. *Powers v. Chicago Transit Auth.,* 846 F.2d 1139, 1141 (7th Cir.1988) (collecting cases). We

---

17. 28 U.S.C. § 1963 is intended "to provide a simple, inexpensive and expeditious means to enforce federal money judgments." Hershel Shanks & Steven A. Standiford, *Schizophrenia in Federal Judgment Enforcement: Registration of Foreign Judgments under 28 U.S.C. § 1963,* 59 Notre Dame L.Rev. 851, 857 (1984). The statute permits registration of a judgment that is "final by appeal or expiration of time for appeal."

18. Because this part of our decision conflicts with the decision of the United States Court of Appeals for the Second Circuit in *United States ex rel. Mosher Steel Co. v. Fluor Corp.,* 436 F.2d 383 (2d Cir.1970), *cert. denied,* 402 U.S. 945, 91 S.Ct. 1623, 29 L.Ed.2d 114 (1971) and is inconsistent with the approach of this circuit in *Fuhrman v. Livaditis,* 611 F.2d 203 (7th Cir.1979), it has been circulated to the entire court pursuant to Circuit Rule 40(f). No member of the court in active service has requested that the matter be reheard en banc.

19. In the criminal setting, the denial of a motion to quash a subpoena is not final. *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971). Instead, one "must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *Id.* (citing *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940)). The contempt judgment for refusal to comply with the subpoena is appealable, and the appeal can include a challenge to the subpoena itself. For that reason, it is appropriate to describe contempt as "a last-ditch or safety-valve device for obtaining appellate review of unappealable orders." *Crowder v. Sullivan,* 897 F.2d 252, 253 (7th Cir.1990) (per curiam).

commented in that opinion that thoughtful members of the legal profession have suggested that the different treatment accorded criminal and civil contempts is not appropriate. *Id.* However, as we noted in *In re Witness Before the Special October 1981 Grand Jury*, 722 F.2d 349, 351 (7th Cir.1983), and confirmed in *Powers*, 846 F.2d at 1141, this rule is not a matter that we are free to change on our own.[20]

Finally, we note that the parties do not suggest that, because the judgment of contempt included a sentence of imprisonment, our jurisdiction might be premised on the Recalcitrant Witness Statute, 28 U.S.C. § 1826.[21] We believe this omission is well taken. That statute does not provide an appropriate predicate for our jurisdiction. As a noted treatise has explained, the requirements of that statute are "quite separate from the final judgment rule." 15B Charles A. Wright et al., *Federal Practice and Procedure* § 3917, at 410 (1976). Indeed, the legislative history specifically notes that the statute was intended "to codify present practice," including, we must assume, the party witness exception to the right to appeal. The plain language of the statute, moreover, does not confer a right to appeal, but simply regulates how a preexisting right to appeal ought to be prosecuted.[22] Accordingly, we must conclude that the district court's judgment of civil contempt is not reviewable in this court because it is not a final judgment.

### Conclusion

The two judgments consolidated for appeal before us are not final judgments within the meaning of § 1291. Nor does this case present a situation that would justify the use of the extraordinary remedy of mandamus. Accordingly, the appeals are dismissed for want of appellate jurisdiction.

DISMISSED.

20. We note that Congress has recently given the Supreme Court, acting through the rule-making process established by the Rules Enabling Act, 28 U.S.C. § 2072, the authority to fine tune matters of "finality" and to implement additional avenues of interlocutory appeal. The Judicial Improvement Act of 1990, Pub.L. No. 101–650, also authorizes the Supreme Court to make a rule or rules that define when a judgment is final. Specifically, the statute adds a new paragraph to 28 U.S.C. § 2072; it states:

(c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

The Federal Courts Administration Act of 1992, Pub.L. No. 102–571, authorizes the Supreme Court to expand by rule the instances in which an interlocutory decision is appealable. The statute adds a new paragraph to 28 U.S.C. § 1292. The new paragraph states:

(e) The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

21. 28 U.S.C. § 1826, in pertinent part, provides:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, ... the court, upon such refusal, ... may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal....

22. We also note that the statute appears never to have been invoked to afford a party witness in a civil proceeding the right to appeal a judgment of civil contempt. In *United States v. Pilcher*, 672 F.2d 875 (11th Cir.), *cert. denied*, 459 U.S. 973, 103 S.Ct. 306, 74 L.Ed.2d 286 (1982), the court assumed that it could review a judgment of civil contempt involving imprisonment when the contemnor was a defendant in an ongoing criminal trial. In *United States v. Johnson*, 801 F.2d 597, 599 (2d Cir.1986), however, the court seems to have held that the usual party witness rule ought to apply in such a situation.