# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2232

RESEARCH AUTOMATION, INC.,

*Plaintiff-Appellant,*

*v.*

SCHRADER-BRIDGEPORT
INTERNATIONAL, INC.,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-01265—**Joan B. Gottschall**, *Judge.*

————————

ARGUED SEPTEMBER 15, 2010—DECIDED NOVEMBER 23, 2010

————————

Before MANION, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This case presents a relatively rare appeal of an issue that arises frequently in district courts: two parties file identical lawsuits, each a mirror-image of the other, in different federal districts. To prevent duplication of this sort, district courts may transfer, enjoin, or dismiss one of the lawsuits. We take this opportunity to provide additional guidance on this issue for district courts and for litigants.

The parties in this case filed mirror-image lawsuits in two different district courts, each claiming the other had breached their contract for the manufacture and sale of an industrial cleaning machine. Shortly after seller Research Automation, Inc., an Illinois corporation, delivered the machine to the Virginia manufacturing plant of buyer Schrader-Bridgeport, Inc., a dispute arose as to whether the machine met the contract specifications. Each party filed suit in its home state's courts. After both cases were removed to their respective federal courts, each defendant moved to transfer the competing lawsuit to its preferred venue. Research Automation also asked the Illinois court to enjoin the Virginia proceedings on the ground that the Illinois suit should receive priority for having been filed first. The Illinois district judge ruled on that motion together with Schrader-Bridgeport's transfer motion, finding that a transfer to Virginia under 28 U.S.C. § 1404(a) was the most appropriate resolution of the parties' competing motions.

We affirm the district court's decision to deny the injunction and to transfer the Illinois action to the Western District of Virginia. Where a district court gives thoughtful consideration to the factors applicable to a transfer analysis under section 1404(a), we give its decision substantial deference. That deference applies regardless of whether there is only one lawsuit between the parties or whether there is a second case pending in the other forum.

*Facts and Procedural Background*

In 2006, plaintiff Research Automation, Inc. entered into an agreement with defendant Schrader-Bridgeport International, Inc. to manufacture a custom-made "High Pressure Water Jet Deburr and Cleaning Machine," which Schrader-Bridgeport planned to use to clean and deburr its automotive valves and stems. The machine was to be completed in 2007, but Schrader-Bridgeport alleged that the machine failed to satisfy the requirements specified in the agreement and filed a lawsuit alleging breach of the agreement in a Virginia state court on November 16, 2007. As the parties attempted to work out their differences, the state court litigation was not pursued and eventually was non-suited on February 2, 2009, due to lack of service.[1]

Four days later, Research Automation sued Schrader-Bridgeport in an Illinois state court. Research Automation alleged that Schrader-Bridgeport breached the parties' amended agreement by failing to pay. On February 23, 2009, Schrader-Bridgeport filed its own suit in a Virginia state court alleging that Research Automation breached the same agreement. Each case was removed to federal court on the basis of diversity jurisdiction: Schrader-Bridgeport

---

[1] Under Virginia law, a party is allowed one non-suit, which acts as a voluntary dismissal, as a matter of right. Va. Code Ann. § 8.01-380(B). This earlier filed state court case might have been construed as the first-filed case between the parties on this issue, undermining Research Automation's claim to have the "first-filed" case. The district court did not see things that way, however, so we do not pursue that line of analysis.

removed the Illinois suit to the Northern District of Illinois on February 27, 2009, and Research Automation removed the Virginia action to the Western District of Virginia on March 23, 2009. The parties agree that these suits are mirror images of each other, with the exception that the Virginia action also names as a defendant a North Carolina corporation that served as Research Automation's agent in the parties' original negotiations.

On March 24, 2009, one day after removing the Virginia action, Research Automation filed a motion in Illinois to enjoin Schrader-Bridgeport from prosecuting its action in Virginia. Two days later, on March 26, Schrader-Bridgeport moved to transfer the Illinois case to the Virginia court pursuant to 28 U.S.C. § 1404(a). On April 27, 2009, the Illinois court denied Research Automation's motion for an injunction and granted Schrader-Bridgeport's motion to transfer. This appeal followed.

## *Analysis*

Under 28 U.S.C. § 1292(a)(1), we have jurisdiction over the appeal of the district court's order denying Research Automation's motion for an injunction. A decision granting or denying a section 1404(a) transfer is ordinarily a non-reviewable interlocutory order. *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003). The doctrine of pendent appellate jurisdiction, however, allows us to review an otherwise unappealable interlocutory order if it is "inextricably intertwined with an appealable one." *Montano v. City of Chicago*, 375 F.3d 593, 599 (7th Cir. 2004), quoting *Jones v. InfoCure Corp.*, 310 F.3d 529, 536 (7th Cir. 2002). Here, the

district court's two rulings are inextricably intertwined. Both the denial of the injunction and the district court's transfer order concern the same single issue: whether this case should be litigated in Illinois or in Virginia. We exercise pendent appellate jurisdiction over the district court's order transferring the case to Virginia.

The parties agree that we review the district court's decision on both motions for an abuse of its discretion. See *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (reviewing a transfer order under an abuse-of-discretion standard); *Martin v. Graybar Electric Co.*, 266 F.2d 202, 203-05 (7th Cir. 1959) (applying an abuse-of-discretion standard to an injunction to halt proceedings in identical lawsuits). This standard implies "a very limited scope of appellate review." *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). We "do not simply engage in a perfunctory rubber-stamping of the district court's decision," but we "give that decision substantial deference." *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 594 (7th Cir. 1986) (citation and internal quotation marks omitted).

The parties disagree with respect to the scope of the district court's discretion and the manner in which it was applied. Research Automation contends that the judicial doctrine known as the "first-to-file rule" defines the bounds of the district court's discretion, limiting the court's analysis under section 1404(a) to a determination of which case was filed first. Schrader-Bridgeport argues that the district court has the discretion to depart from the first-to-file rule where a transfer analysis otherwise warrants. Based on the weight of authority and principles of sound

judicial administration, we conclude that the filing order is only one factor among many and in this case was not entitled to control the district court's evaluation.

As a practical matter, we address the section 1404(a) issue first because, like the district court, we find it to be decisive in this case.

I.  *Transfer under 28 U.S.C. § 1404(a)*

In 1948, Congress enacted the federal change of venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district. Subsection (a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to [a] '. . . case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); see also *In re Joint Eastern & Southern Districts Asbestos Litigation*, 22 F.3d 755, 762 (7th Cir. 1994) (the section 1404 statutory transfer power "was clearly intended to vest in the transferor court more discretion than it had been permitted to exercise under the common law doctrine"). By the same token, we grant a

substantial degree of deference to the district court in deciding whether transfer is appropriate. See *Tice v. American Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1998). The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice. The statute permits a "flexible and individualized analysis" and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations. *Stewart*, 487 U.S. at 29.

With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. See, *e.g.*, *Schumacher v. Principal Life Insurance Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913-15 (N.D. Ill. 2009). Other related factors include the location of material events and the relative ease of access to sources of proof. See, *e.g.*, *Sassy, Inc. v. Berry*, 406 F. Supp. 2d 874, 876-77 (N.D. Ill. 2005); *Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.*, 42 F. Supp. 2d 821, 833-34 (N.D. Ill. 1999).

The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system. See *Van Dusen*, 376 U.S. at 626-27. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, see *Chicago, Rock Island & Pacific Railroad Co. v. Igoe,* 220 F.2d 299, 303 (7th Cir. 1955);

each court's relative familiarity with the relevant law, *Van Dusen*, 376 U.S. at 645; the respective desirability of resolving controversies in each locale, *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002); and the relationship of each community to the controversy, see *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 777 (N.D. Ill. 1998). The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result. See *Coffey*, 796 F.2d at 220-21.

Taking each of these factors of convenience and public interest into account, the district court determined that the sum of the interests among the parties weighs more heavily toward adjudication in Virginia. First, the court concluded that neither party established that the other forum would pose an overwhelming hardship for the parties themselves. Next, the court evaluated the convenience of party and non-party witnesses and found that neither forum would be more convenient for the witnesses overall. The court then considered the locations of sources of proof and determined that this factor slightly favored Virginia. Finally, the court listed the "material events" taking place in Virginia: the negotiation of the original agreement, performance of the amended agreement, and the ultimate testing of the machine. The district court also noted the fact that the purpose of the original and amended agreements was for Research Automation not only to deliver but also to install the machine in Schrader-Bridgeport's Virginia facility, where it was supposed to work successfully. These material events in Virginia formed the basis of the court's transfer decision. The court's conclusion was reasonable.

Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer. See, *e.g.*, *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007); *Kubin-Nicholson Corp. v. Gillon*, 525 F. Supp. 2d 1071, 1075 (E.D. Wis. 2007); *Enviroplan, Inc. v. Western Farmers Electric Cooperative*, 900 F. Supp. 1055, 1064 (S.D. Ind. 1995); *Kendall U.S.A., Inc. v. Central Printing Co.*, 666 F. Supp. 1264, 1268-69 (N.D. Ind. 1987). Here, however, while the district judge determined that no one element clearly indicated that one forum would be more convenient than the other, the totality of the factors pointed to Virginia's stronger nexus to the relevant events.

Although the district court's discretion is not unlimited, we adhere to the Supreme Court's directive that, "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable," as in this case, "its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981), citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511-12 (1947). Even if we agreed with Research Automation that the Northern District of Illinois would be a very convenient forum, that is not enough to show that the district court abused its discretion in concluding that the Western District of Virginia is more convenient. And even if we were inclined to reach a different outcome by way of our own review of the record, we would still conclude that the district court, by evaluating factors appropriate to resolve both motions, did not abuse its discretion in deciding to transfer.

II. *The First-to-File Rule*

In an effort to defeat the transfer analysis, Research Automation maintains that Schrader-Bridgeport's motion must fail because a plaintiff's choice of forum is afforded deference so long as the chosen forum is related to the case. See *Gilbert*, 330 U.S. at 508 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").[2] But where, as here, the case involves two identical suits in distinct venues, this factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed. The district court was right to discount this element in this context.

Upon examining the facts and circuit precedent on the issue, the district court was uncertain about whether a first-to-file rule should apply, but it found that the transfer analysis provided sufficient grounds for a transfer. Research Automation argues that the district court erred by not taking into account a presumption in favor of the first-filed Illinois action, relying on this court's "general rule" as stated in *Martin v. Graybar Electric Co.*, 266 F.2d 202, 204 (7th Cir. 1959), that, absent unusual circumstances, a party filing later in time should be enjoined from further prosecution. We do not read *Graybar Electric* the same way.

---

[2] Where this principle applies, certain behavior may count against a plaintiff's choice of forum, such as where there is evidence of forum-shopping or bad faith by a litigant. See *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 609-10 (7th Cir. 2006) (evaluating bad faith as a consideration and discussing the dangers of forum-shopping).

*Graybar Electric* involved an action seeking coercive (as opposed to declaratory) relief filed in the Northern District of Illinois and a parallel declaratory judgment action in the Northern District of Iowa filed six days later. The Illinois district judge in that case expressed reluctance to issue an injunction to block the Iowa action, believing erroneously that he did not have the power to do so. We reversed and remanded, holding that a district court has discretion to issue an injunction where the parties are prosecuting parallel actions in different districts. The "general rule" prescribed in *Graybar Electric* was intended to empower the district courts with respect to their injunctive authority, not to mandate any particular standard or approach.

Since *Graybar Electric*, we have made clear that where the facts of that case are replicated—that is, where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief—we ordinarily give priority to the coercive action, regardless of which case was filed first. In those cases, we have repeatedly taught that this circuit does not rigidly adhere to a first-to-file rule. *E.g.*, *Trippe Manufacturing Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (affirming dismissal of first-filed declaratory judgment action in favor of later-filed coercive action); *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) (finding that the "mere fact" that a plaintiff filed its action first "does not give it a 'right' to choose a forum"); see also *Tamari v. Bache & Co. (Lebanon)*, 565 F.2d 1194, 1203 (7th Cir. 1977) (teaching that there is no rigid chronological rule but that the timing of filing may be one factor affecting discretion). Even in *Graybar Electric*, we noted that any mechani-

cal solution of such a problem would not be "[w]ise judicial administration." 266 F.2d at 203, quoting *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).

Courts have also departed from a first-to-file rule where one party files its lawsuit in anticipation of an impending suit by the opposing party. See, *e.g.*, *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (finding that where a plaintiff files an action "in the face of a clear threat" that the opposing party will sue, a court will dismiss a first-to-file argument). This type of behavior only exacerbates the risk of wasteful litigation.[3]

This court has "never laid down an inflexible rule that the prior filing controls**."** *Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257, 1265 (7th Cir. 1977); see also *Graybar Electric*, 266 F.2d at 203 (declining to lay down "a judicial fiat that the prosecution of the subsequent suit must or must not be enjoined as a matter of law"). Research Automation relies on language from *Asset Allocation &*

---

[3] Schrader-Bridgeport contends Research Automation's "improper anticipatory filing" should foreclose its first-to-file argument. The district court found that it appeared from the record that Schrader-Bridgeport had not yet breached the parties' amended agreement because time still remained for it to make its final payment for the machine according to the terms of the agreement. While the court noted that Research Automation had not submitted any evidence to support a theory of anticipatory breach, the court proceeded with its analysis nonetheless without ruling as to any impropriety in the timing of Research Automation's complaint. We do the same.

*Management Co. v. Western Employers Insurance Co.*, 892 F.2d 566 (7th Cir. 1989), stating that there is a rebuttable presumption that the first case should proceed, "subject to the principles that govern requests for transfer to a more convenient forum." 892 F.2d at 573. The *Asset Allocation* opinion also said that a district court has "a power, [but] not a duty," to enjoin a second-filed case. *Id.* at 572. In our view, the *Asset Allocation* court's intended meaning is clear: the first-filed case may proceed where the principles that govern requests for transfer do not indicate otherwise. We reiterate our holding in *Tempco Electric* that, although a first-to-file rule would have the "virtue of certainty and ease of application, . . . the cost—a rule which will encourage an unseemly race to the courthouse . . . —is simply too high." 819 F.2d at 750.

Our approach is not unique in this respect. The other circuits have developed similar practices. Though the Eleventh Circuit has made reference to a "strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule," and has "require[d] that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception" to the rule, *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted), we do not find as strong support among our sister circuits. Most maintain the rule as a guiding principle to be left to the discretion of the district court. For example, though the Third Circuit refers to a first-to-file rule, it is "not a mandate directing wooden application of the rule . . . . District courts have always had discretion to retain jurisdiction given appropriate

circumstances justifying departure from the first-filed rule." *EEOC v. University of Pennsylvania*, 850 F.2d 969, 972 (3d Cir. 1988). The Sixth and D.C. Circuits have adopted the same reasoning. See *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (finding that the first-to-file rule is "not a strict rule" and that district courts "have the discretion to dispense with [it] where equity so demands"), quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004), and *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001); *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 350 (D.C. Cir. 2003) (emphasizing that district courts should balance equitable considerations rather than use "a mechanical rule of thumb") (citation and quotation marks omitted).

The Fourth and Fifth Circuits have also indicated that courts should consider the filing chronology as part of the transfer calculus. See *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-32 (5th Cir. 1985) (discussing first-to-file as a general principle for the discretion of the district court in deciding whether to transfer); *Ellicott Machine Corp. v. Modern Welding Co.*, 502 F.2d 178, 181-82 (4th Cir. 1974).

The Ninth Circuit has noted that the first-to-file rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The Eighth Circuit has likewise treated the timing of filing as an element "to be applied in a manner best serving the

interests of justice," serving as a guide to the court's discretion "absent compelling circumstances." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993), quoting *United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487 (8th Cir. 1990).

The First, Second, and Tenth Circuits maintain substantial support for the rule, but they too have left room for discretion. See *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000) (noting that the first-filed action is "generally preferred"), quoting *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7 (1st Cir. 1987); *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982) (holding that "the court which first obtains jurisdiction should be allowed to first decide issues of venue," but that this "does not necessarily mean that it should decide the merits of the case"). The Federal Circuit, on the other hand, applies the rule more strictly than the other circuits in the context of patent infringement actions, which present a unique set of concerns not relevant to our determination. See, *e.g.*, *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993), overruled in part on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995) (holding that district court decisions on whether to exercise jurisdiction in declaratory judgment actions are subject only to abuse-of-discretion appellate review).

Research Automation relies on *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000), to argue that the party filing second has a burden to demonstrate "special circumstances" in order to overcome the first-to-file rule. We decline to impose such a burden. Notwith-

standing that the Second Circuit adheres more closely to a first-to-file principle than other circuits, Research Automation would not prevail even under the *Citigroup* approach. The *Citigroup* court also acknowledged that the factors to be weighed in a first-to-file analysis are the same factors that apply to the decision of whether transfer is appropriate under section 1404(a). 97 F. Supp. 2d at 555-63. Despite attributing a "priority" to first-filed cases, the *Citigroup* court outlined factors for departing from a default preference for the first-filed case, including through a balancing of convenience. 97 F. Supp. 2d at 560-63. We have upheld the use of the same factors in prior cases without giving the first-filed case any supplementary weight, and we decline to augment the weight it receives here.

In this case, the district court followed our consistent practice of evaluating the order of filing as part of the section 1404(a) transfer analysis. At oral argument, Research Automation seemed to agree with this approach, acknowledging that the section 1404(a) factors "clearly" apply to a determination of whether the first-filed case should proceed. Research Automation maintains, however, that none of the factors is sufficient on these facts to overcome a preference for the forum where the first case was filed. We disagree and hold that there is no such preference. Where a case is filed first should weigh no more heavily in the district court's analysis than the plaintiff's choice of forum in a section 1404(a) calculation. We apply the same standard to a section 1404(a) motion regardless of whether there is a second-filed case. The statutory language provides the ultimate touchstone, while the considerations gleaned from judicial glosses will also

be applicable to many cases of this type in the sound discretion of the district judge.

## *Conclusion*

As the Supreme Court acknowledged more than thirty years ago, there is "no precise rule" for resolving the problem created by mirror-image lawsuits in two different federal courts. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). We hold that where a district court faces one of two identical lawsuits and one party moves to transfer to the other forum, the court should do no more than consider the order in which the suits were filed among the factors it evaluates under 28 U.S.C. § 1404(a).

Because we find the district court did not abuse its discretion, either in the manner in which it approached the parties' competing motions or in the analysis it applied, we affirm its decision to deny an injunction stopping the Western District of Virginia case and to transfer the Illinois case to that district.