**CATERPILLAR, INC., Plaintiff,**

v.

**ESCO CORPORATION, Defendant.**

Case No. 12–cv–1017.

United States District Court, C.D. Illinois, Peoria Division.

Dec. 18, 2012.

Edward H. Williams, John M. Touhy, Gillian Lindsay Whittlesey, Baker & Hostetler LLP, Chicago, IL, Gregory James Commins, Jr., Robert G. Abrams, Baker & Hostetler LLP, Washington, DC, Timothy L. Bertschy, John P. Heil, Jr., Heyl Royster Voelker & Allen, Peoria, IL, for Plaintiff.

Charles W. Shifley, Binal J. Patel, Louis DiSanto, Timothy J. Rechtien, Banner & Witcoff, Chicago, IL, David G. Lubben, Davis & Campbell LLC, Peoria, IL, for Defendant.

### ORDER & OPINION

JOE BILLY McDADE, Senior District Judge.

This matter is before the Court on Defendant's Motion for Transfer of Venue, filed November 21, 2012. (Doc. 60). Plaintiff has responded in opposition, and the Motion is now ready for disposition. For the reasons stated below, the Motion to Transfer is granted.

Plaintiff has also filed a Motion for Status Conference and Hearing on the Pending Motions. (Doc. 64). The Court has reviewed the parties' briefs on all the pending motions, and has determined that a hearing would not assist in clarifying any of the issues they raise. The Court has had no difficulty in understanding the parties' written arguments, which are clearly set forth, and believes that oral argument would only serve to confuse matters. Moreover, the Court had already determined that it would be most efficient to decide the Motion to Transfer prior to the Motion for Leave to Amend or the Motion to Intervene, and stands by that decision. As explained further below, transfer promotes judicial efficiency and the interests of justice in part because it obviates the need to address those motions, or the legal questions that would likely follow from them. Plaintiff's Motion for Status Conference and Hearing on the Pending Motions is therefore denied.

Finally, Defendant filed a Motion for Leave to File a Reply in support of its Motion for Transfer of Venue; for the same reasons the Court does not believe a hearing is necessary, the Court also finds that a Reply is unnecessary, and so denies this Motion. (Doc. 66).

### BACKGROUND

In 2002, Plaintiff and Defendant entered into a contract in which Defendant agreed to provide Plaintiff with products known as the K Series. At the same time, they also executed a license agreement providing Plaintiff with the option of producing certain quantities of certain K Series products. In the midst of a dispute over the terms and fulfillment of their contract obligations, Defendant sent a letter dated July 22, 2011 to Plaintiff, stating that Plaintiff's CapSure products might infringe three of Defendant's patents.

Plaintiff filed its three-count Complaint against Defendant on January 12, 2012. The first count alleged breach of contract and the second sought related injunctive relief, while the third sought a judgment declaring that Plaintiff had not infringed Defendant's three patents. Following the Court's denial of Plaintiff's request for a Temporary Restraining Order, the parties settled and dismissed the first two counts, leaving only the third. (Docs. 25 & 27). Plaintiff filed its First Amended Complaint, containing only the declaratory judgment count. (Doc. 28). The Court then determined on July 24, 2012 that it had jurisdiction over the declaratory judgment count. (Doc. 43).

On August 29, 2012, Defendant, along with ESCO Canada, Ltd., filed a Complaint against Plaintiff, Cashman Equip-

ment Company, Caterpillar Global Mining, LLC, Raptor Mining Products (USA), Inc., and Raptor Mining Products in the District of Nevada. In that suit, Defendant alleged the infringement of the three patents at issue in the instant suit, as well as three other patents.[1] Cashman is a distributor of Plaintiff's accused products, located in Nevada, and the two Raptor manufactures and sells components containing the CapSure system to Plaintiff's dealers.

In response to Defendant's suit in Nevada, Plaintiff filed a Motion for Leave to File a Second Amended Complaint on October 26, 2012, incorporating the additional three patents in its request for declaratory relief, and naming Caterpillar Global and Cashman as co-plaintiffs and ESCO Canada as a defendant. (Doc. 55). On the same day, the Raptor parties filed a Motion to Intervene in this suit, and seeking the same declaratory relief as Plaintiff. (Doc. 57). Magistrate Judge Gorman set both of these Motions for hearing on December 4, 2012, but continued the hearing until after this Court had ruled on the November 21, 2012 Motion for Transfer of Venue. (10/30/12 Text Order; 11/27/12 Text Order). Defendant opposes both Motions. If the Court were to grant these two Motions, assuming no problems of personal jurisdiction over the additional defendant, the amendment and intervention would make this suit a mirror image of the Nevada action.[2]

LEGAL STANDARD

■ In considering a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Court must apply the law of the Seventh Circuit, even in patent cases. *In re Link–A–Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed.Cir.2011) (citing *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir.2003)); *Winner Intern. Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed.Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Regents of the Univ. of Cal. v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed.Cir.1997)). The Court also considers Federal Circuit cases insofar as they illuminate issues unique to patent litigation, as well as relevant district court cases where helpful.

■ Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[3] This determination is left primarily to the district court's sound discretion. *Research Automation, Inc. v. Schrader–Bridgeport Intern., Inc.*, 626 F.3d 973, 977 (7th Cir.2010) (citing *Coffey*

---

1. Plaintiff disputes whether all of these three additional patents are enforceable, but, as will be explained further below, that issue is one of the several that must be left for the Nevada court to decide.

2. The Nevada suit defendants have filed a Motion to Dismiss, or in the Alternative, to Transfer Venue in the Nevada court, asking that the district court there dismiss that suit in favor of the instant suit, or transfer it to this Court, and have also filed a Motion to Stay there asking that court to stay its decision on the Motion to Dismiss or Transfer until this Court rules on Plaintiff's Motion for Transfer of Venue, citing to a Ninth Circuit holding that it is better for the court with the first-filed suit to rule on such questions first. (District of Nevada Case No. 2:12–cv–1545–RCJ–PAL: Docs 28 & 41). *Juniper Networks, Inc. v. Mosaid Techs. Inc.*, No. C 11–6264, 2012 WL 1029572, *2–3 (N.D.Cal. Mar. 26, 2012) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir.1991)); *EMC Corp. v. Bright Response, LLC*, 2012 WL 4097707, at *2 (N.D.Cal. Sept. 17, 2012).

3. Plaintiff does not appear to challenge Defendant's assertion that Plaintiff could have brought its instant suit in Nevada because Plaintiff is subject to personal jurisdiction there. (Doc. 61 at 12–13).

*v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir.1986)). The Seventh Circuit "does not rigidly adhere to a first-to-file rule," so the Court "evaluat[es] the order of filing as part of the section 1404(a) transfer analysis." *Id.* at 980–81 (citations omitted).

### DISCUSSION

Defendant argues that both the convenience of the parties and the interests of justice weigh in favor of a transfer to the District of Nevada. Plaintiff, on the other hand opposes transfer, relying heavily on the first-to-file rule, and arguing, in addition, that both the convenience of the parties and the interests of justice weigh against transfer. Plaintiff erroneously asserts, relying entirely on authority from Circuits other than the Seventh, that the first-to-file rule creates a kind of presumption in favor of the earlier suit, but, as noted above and explained more fully below, the order of filing is not dispositive in this case. (Doc. 63 at 8, 12).

## I. Convenience of parties and witnesses

 Defendant claims that Nevada is more convenient because many of the third-party witnesses and other important non-parties are located in Nevada and in the Western portion of the country, and that it is easier for out-of-town witnesses to travel to Las Vegas than to Peoria; that both parties have ties to Nevada, though ESCO is located primarily in Portland, Oregon, and Caterpillar is headquartered in Peoria, Illinois; that the accused products are sold in Nevada (and elsewhere); that the material events relating to research, design, and development of the accused products took place in western Canada, where Raptor is located; and that the manufacture of the accused products took place in Mexico. Plaintiff argues that Nevada is not more convenient than Illi-

nois, because only one party, Cashman, is located there; because neither ESCO, ESCO Canada, Caterpillar, Caterpillar Global Mining, nor the Raptor parties, have witnesses or documents there; and because the one Nevada party's evidence can be obtained through Caterpillar.

In considering the convenience question, "courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. Other related factors include the location of material events and the relative ease of access to sources of proof." *Research Automation,* 626 F.3d at 978 (citing *Schumacher v. Principal Life Insurance Co.,* 665 F.Supp.2d 970, 977 (N.D.Ind.2009); *Jaramillo v. DineEquity, Inc.,* 664 F.Supp.2d 908, 913–15 (N.D.Ill. 2009); *Sassy, Inc. v. Berry,* 406 F.Supp.2d 874, 876–77 (N.D.Ill.2005); *Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.,* 42 F.Supp.2d 821, 833–34 (N.D.Ill.1999)). The importance of each of these factors varies for each case and by type of case.

Several courts have observed that the convenience of non-party witnesses, as compared to the convenience of witnesses who are in the employ of the parties, is perhaps the most important of the convenience factors. *Compression Technology Solutions LLC v. EMC Corp.,* No. 4:11cv1579 TCM, 2012 WL 1188576, *5 (E.D.Mo. Apr. 6, 2012) (citing *In re Acer Am. Corp.,* 626 F.3d 1252, 1255 (Fed.Cir. 2010)); *Fluid Control Products, Inc. v. Aeromotive, Inc.,* 4:09–CV–1667 CAS, 2011 WL 620115, *2 (E.D.Mo. Feb. 11, 2011); *Anheuser–Busch, Inc. v. City Merchandise,* 176 F.Supp.2d 951, 959 (E.D.Mo. 2001); *Pitney Bowes, Inc. v. Data–Pac Mailing Systems Corp.,* No. 07–cv–470–jcs, 2007 WL 5614076, *3 (W.D.Wis. Dec. 4, 2007) (citing *Adams v. Newell Rubbermaid Inc.,* No. 07–C–313–S, 2007 WL

5613420, *2, 2007 U.S. Dist. LEXIS 62512, *5 (W.D.Wis. Aug. 21, 2007)); *Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F.Supp.2d 1062, 1064 (W.D.Wis. 2005). Here, Defendant points to the fact that most of the non-party witnesses it would rely on reside in the western portion of the country, and that it would be easier for them to travel to Las Vegas than to Peoria. It appears that most of these witnesses, though, would also be outside the subpoena power of the Nevada court. Plaintiff does not present any evidence or argument to the contrary, or discuss any non-party witnesses. This factor thus slightly favors transfer.

■ It is indisputable that it would be more convenient for Plaintiff to litigate in Peoria, and that this convenience is probably greater than the comparative convenience Defendant or the other proposed parties, aside from Cashman, would gain by litigating in Nevada. This factor thus slightly favors keeping the case in this Court. The Court also notes, however, that the convenience of witnesses who are employed by the parties, such as Plaintiff's and Raptor's engineers, is not an important consideration, because their participation in the suit will be obtained as part of their employment, rather than by their own willingness or the Court's subpoena power, and their compensation and expenses will be paid by their employers. *Bullard v. Burlington Northern Santa Fe Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, *4 (N.D.Ill. Aug. 29, 2008) (citing *Abbott Labs. v. Church & Dwight*, No. 07 C 3428, 2007 WL 3120007, *4 (N.D.Ill. Oct. 23, 2007); *Mleczek v. Aspen Skiing Co., LLC*, No. 07 C 238, 2007 WL 1810530, *2 (N.D.Ill. June 20, 2007)). Therefore, the Court does not weight this factor very heavily.

Both parties dispute the location of material events. Defendant asserts that be-cause the Raptor parties claim to have invented the allegedly infringing parties, it is their location in western Canada that should prevail—since Nevada is closer than Illinois, it is claimed to be more convenient. Defendant also points to the sale of Cashman's sale of allegedly infringing products in Nevada, and the apparent manufacture of Caterpillar's allegedly infringing products in Mexico. Plaintiff, on the other hand, asserts that the relevant material events likely occurred both in Peoria and in the Raptor parties' location. It discounts the importance of Cashman, arguing that it was added merely to support the choice of a Nevada forum, and of the manufacturing location. Some courts have determined that the location of material events is "largely irrelevant in patent cases, as infringement is determined by comparing the alleged infringing device or product with the language of the claim." *MPH Technologies OY v. Zyxel Communications Corp.*, No. 09 C 3339, 2010 WL 2836734, *4 (N.D.Ill. July 16, 2010) (quoting *Kolcraft Enters. v. Chicco USA, Inc.*, 2009 U.S. Dist. LEXIS 101605, *8 (N.D.Ill. Oct. 23, 2009)). "The location in which the allegedly infringing product is designed, produced, shipped, sold or purchased does not weigh in favor of either party." *Id.* The Court agrees with this reasoning, and the parties have not presented any explanation for why the location of material events would be particularly important in this case.

Similarly, some courts have discounted the importance of being near the probable sources of evidence, because it will likely be necessary to copy and ship any documentary evidence in any event, and because technological advances have made it simpler to transmit documentary evidence. *Tech. Licensing Corp.*, 2012 WL 1298611, *3 (citing *Abbott Labs. v. Church & Dwight*, 2007 WL 3120007 (N.D.Ill. Oct. 23, 2007); quoting *CoolSavings.Com, Inc.*

*v. IQ.Commerce Corp.*, 53 F.Supp.2d 1000, 1006 (N.D.Ill.1999)) ("[E]ase of access to evidence also has little import in patent cases....'[N]o matter where the trial is held, all relevant documents—regarding both the patented invention and the allegedly infringing technology—will have to be collected, copied, and sent to the offices of trial counsel.'"); *Ford v. Hubbell Inc.*, No. 10–513–GPM, 2011 WL 1259707, *4 (S.D.Ill. Mar. 31, 2011) (noting that because "documents will be disclosed either by mail or electronically or, most likely, both," their physical location was unimportant).[4] The Court, while not discounting this factor entirely, does agree that the physical location of documents deserves less weight in this case.

The Federal Circuit has observed that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d 1338, 1345 (Fed.Cir.2009). Here, the accused infringer is Plaintiff, so the bulk of the evidence is likely to be in Peoria. However, Defendant points to Raptor's claim that its employees invented the accused products, and Plaintiff does not appear to deny that Raptor at least played a large part in their design. Therefore, the location of any Raptor evidence may well be important too; that evidence appears to be in western Canada, which is in neither forum, but which is marginally closer to Nevada than to Illinois. On balance, this factor thus weighs very slightly against transfer.

In sum, the Court has determined that the convenience of non-party witnesses, a very important factor, is probably best served by transfer, that Plaintiff's greater convenience in Illinois slightly outweighs Defendant's claimed greater convenience in Nevada, and the location of documentary evidence weighs slightly against transfer. The Court thus finds that, on balance, the convenience factors are neutral, or very slightly favor Plaintiff. If this were the end of the inquiry, the Court would deny transfer because simply shifting inconvenience from one party to another is insufficient to justify a transfer. However, the Court must also consider the interests of justice.

## II. Interest of justice

In addition to arguing that the Nevada forum is more convenient, Defendant asserts that transfer would obviate the need to resolve the substantial personal jurisdiction, amendment, intervention, and necessary parties questions, that this matter can be easily consolidated with the Nevada suit, that the District of Nevada's participation in the Patent Pilot Program indicates a greater familiarity with patent cases, and that Nevada has a greater interest than Illinois in the suit's subject matter. Plaintiff disputes the argument that transfer would obviate the need to address the personal jurisdiction and other outstanding preliminary issues, primarily by arguing that those issues should eventually be decided in its favor.

The Court finds that the interest of justice factor is the most important in this case, since the convenience factors are largely neutral. In *Coffey v. Van Dorn Iron Works*, the Seventh Circuit outlined the contours of this factor:

---

4. On the other hand, in *Compression Technology Solutions* the Eastern District of Missouri noted that the Federal Circuit overturned two transfer decisions because the district courts had relied on the fact that technological advances made the transport of documents easier, and thus failed to consider the location of evidence. 2012 WL 1188576, *7 (citing *In re* *Link–A–Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed.Cir.2011); *In re Genentech, Inc.*, 566 F.3d 1338, 1345–46 (Fed.Cir.2009)); *Datatreasury Corp. v. Capital One Financial Corp.*, No. 6:11cv92 JDL, 2012 U.S. Dist. LEXIS 114453, *11–13 (E.D.Tx. Jan. 27, 2012) (considering location of documents in patent case).

The "interest of justice" is a separate component of a § 1404(a) transfer analysis, and *may be determinative in a particular case,* even if the convenience of the parties and witnesses might call for a different result. Factors traditionally considered in an "interest of justice" analysis relate to the efficient administration of the court system. For example, the interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial[.] By the same token, related litigation should be transferred to a forum where consolidation is feasible. In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law.

796 F.2d 217, 220–21 (7th Cir.1986) (internal citations omitted) (emphasis added). *See also In re Vistaprint Ltd.,* 628 F.3d 1342 (Fed.Cir.2010) (can be appropriate for district courts to consider judicial economy above parties' convenience). In addition, a number of courts have considered whether transfer would obviate the need for a court to answer certain substantial legal questions, thus conserving judicial resources. *Pfizer Inc. v. Apotex, Inc.,* No. 08–cv–00948–LDD, 2009 WL 2843288, *3 (D.Del. Aug. 13, 2009); *SoccerSpecific.com v. World Class Coaching, Inc.,* No. 08–6109–TC, 2008 WL 4960232, *5 (D.Or. Nov. 18, 2008) (citing *Datasouth Computer v. Three Dimensional Tech.,* 719 F.Supp. 446, 452 (W.D.N.C.1989); *Kahhan v. City of Fort Lauderdale,* 566 F.Supp. 736, 738, 740 (D.Pa.1983); *Donnelly v. Klosters Rederi A/S,* 515 F.Supp. 5, 7 (E.D.Pa.1981); *X–Rail Sys. Inc. v. Norfolk & W. Ry. Co.,* 485 F.Supp. 553, 555 (D.N.J.1980); *Teru-*

*kuni Kaiun Kaisha v. C.R. Rittenberry & Assocs.,* 454 F.Supp. 418, 422–423 (S.D.N.Y.1978); 15 Wright and Miller, Federal Practice and Procedure § 3854, at 469–470 & n. 31 (2d ed. 1986)); *Pitney Bowes, Inc.,* 2007 WL 5614076, *5 (citations omitted).

This Court agrees that courts should consider whether they could avoid substantial questions, especially related to personal jurisdiction, by transferring to a court where the questions would not arise. *Pfizer Inc.,* 2009 WL 2843288, *3; *SoccerSpecific.com,* 2008 WL 4960232, *5; *Pitney Bowes, Inc.,* 2007 WL 5614076, *5. Here, this is a concern that weighs heavily in favor of transfer to the Nevada court, as there are substantial questions concerning personal jurisdiction over ESCO Canada and whether ESCO Canada is a necessary party to this suit, as well as the questions of whether Plaintiff should be permitted to amend its complaint, and whether Raptor should be allowed to intervene. It is not that the resolution of these issues would be shifted to the Nevada court if this matter were transferred; instead, transfer would obviate the need for any court to deal with them at all because these questions have not arisen and will not arise in the Nevada court. Even if this Court were to resolve all of these issues the way Plaintiff wishes, which would address some of the other problems Defendant raises, such as the absence of certain parties or important claims from the instant suit, it would still have had to resolve them, and that expenditure of party and court resources would be entirely unnecessary if this matter were transferred to Nevada.[5] This factor therefore weighs heavily in favor of transfer, as it would save significant judicial resources.

---

**5.** Though Plaintiff claims that it is Defendant pushing for a premature resolution of these questions, Plaintiff's position would in fact force the Court to, least preliminarily, resolve these issues prior to or as part of its analysis

of the Motion to Transfer, because their resolution in its favor is key to the determination that transfer is inappropriate. (Doc. 63 at 7–8, 12; Doc. 64). Indeed, Plaintiff spends a large portion of its brief attempting to attack

In addition, this case can be consolidated with the Nevada suit, as the Nevada suit already contains all of the claims and parties present here. While, as discussed above, the Court cannot say, without the investment of considerable resources, that the instant case could not be broadened to include the important claims and parties in the Nevada suit, there is no question that the Nevada suit can encompass all the issues raised in this case, or that Plaintiff will there be able to raise all of the arguments it mentions.[6]

It might weigh against transfer if the Court had already spent considerable time and resources on this case, as such investment could be considered wasted if the Court did not proceed to hear the case to completion. Though Caterpillar correctly notes that this case has been before this Court since January 2012, the only substantial work this Court has performed with respect to the declaratory judgment claim is to determine that it has jurisdiction over the question presented, and discovery has not yet commenced as to that claim. (Doc. 43). The Court's other work related to the now-resolved contract claims. The Court has therefore not yet gained any significant familiarity with the patents or accused products at issue in the declaratory judgment action. Because the Court's resources are not yet heavily invested in the patent claim, it does not conserve judicial resources for it to retain this matter.

The *Coffey* court specifically noted that a court's familiarity with governing state law would be an important § 1404(a) consideration in diversity cases, and it would appear that this notion can extend to special familiarity with particular types of federal law. Though no courts have relied on a court's familiarity with patent law or participation in the Patent Pilot Program as a *dispositive* factor, they do consider it to be a noteworthy circumstance that can support an otherwise-justified decision under § 1404(a). *Tech. Licensing Corp. v. Harris Corp.*, No. 9 C 820, 2012 WL 1298611, *3 (N.D.Ill. Apr. 16, 2012) ("expediency of patent discovery and trials promoted by the Patent Pilot Program is a material consideration for many patent plaintiffs, and will not be discounted"); *Compression Technology Solutions*, 2012 WL 1188576, *9; *Datatreasury Corp.*, 2012 U.S. Dist. LEXIS 114453, *21. While this Court has substantial judicial experience, and has adopted the Northern District of

---

the personal jurisdiction questions raised by Defendant. (Doc. 63 at 12–17). It appears that even if the Court were to deny transfer after determining, as Plaintiff wishes, that there are no "substantial questions" on these issues, and allow Plaintiff to file its proposed Second Amended Complaint, naming ESCO Canada as a defendant, ESCO Canada would then file a Motion to Dismiss for Lack of Personal Jurisdiction, thus doubling the Court's expenditure of resources on that issue. This is so because it would be improper for the Court to rely on its earlier decision to deny transfer and allow amendment in denying such a Motion to Dismiss—ESCO Canada would be entitled to its own opportunity to present its arguments against personal jurisdiction. If the Court then ruled in favor of ESCO Canada, it could be that this case would then be missing a necessary defendant, the owner of the patents at issue. While Plaintiff disputes that ESCO Canada is necessary, the need to deal with any of these questions would disappear with the transfer of the case, as all of the current and proposed parties are already present in the Nevada action. Even if Caterpillar's arguments on every one of these issues prevail, which is not a foregone conclusion, the Court would unnecessarily have spent considerable time and resources on these questions.

6. For example, Plaintiff accuses ESCO of patent misuse and claims that some of the patents named in the Nevada action are not properly at issue. The Nevada court is certainly competent to decide these issues if Plaintiff wishes to persist with them.

Illinois' Local Rules for patent litigation in an effort to properly manage this case, the District of Nevada's participation in the Patent Pilot Program indicate a greater familiarity and comfort with the administration of patent cases. This means that the suit will likely proceed more simply and expeditiously there, which favors the interests of justice.[7]

Though courts traditionally may also consider whether one of the potential locations has a greater interest in the suit, the Court finds this to be an unimportant consideration in this particular case. Plaintiff argues that Illinois has the greater interest because the state is home to its headquarters and many of its engineers, while none of the design or manufacture of the accused products took place in Nevada. Defendant, on the other hand, posits Nevada's interest in the mining industry as the reason it has a greater interest in this dispute. Neither of these arguments shows why the Court should or should not transfer this particular suit; this is a dispute concerning alleged patent infringement, a matter of national concern. As patent law is nationally uniform, there is no choice of law issue to consider, and no state has a greater interest than any other in promoting the goals of the patent system, which are "(1) to foster and reward invention, (2) to stimulate further innovation, and (3) to ensure free use of ideas in the public domain." *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 342 F.3d 1298, 1306 (Fed.Cir. 2003) (citing *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979)). *See also Pfizer Inc.*, 2009 WL 2843288, *4 (citing *Magsil Corp. v. Seagate Tech.*, No. 08–940, 2009 WL 1259043, *2 (D.Del. Apr. 30, 2009) ("because this action is a patent infringement case, local interests are not implicated in either forum")). The Court therefore finds this to be a neutral factor.

### III. First-to-file rule

Plaintiff asserts that the Court should base its § 1404(a) analysis on the "first-to-file rule," and relies heavily on this purported "rule." While it is the case that a plaintiff's choice of forum is ordinarily entitled to some weight, the Seventh Circuit does not automatically prefer the first-filed suit, or require a party to overcome a presumption in favor of the earlier suit.[8] *Research Automation, Inc.*, 626 F.3d at 979–82.

Indeed, in the Seventh Circuit, a coercive action is ordinarily given priority over a declaratory judgment action, no matter which was filed first.[9] *Research*

---

7. The Court notes that the District of Nevada has slightly better statistics concerning overall median time to final disposition than does this District, as pointed out by Defendant. (Doc. 61 at 17). However, the differences are so slight as to be negligible. The Court would expect, however, that in the narrower category of patent litigation, the District of Nevada is more efficient.

8. The Court notes that the Federal Circuit appears to give more weight to the order of filing, but also that in *Micron Technology, Inc. v. MOSAID Technologies, Inc.*, the Federal Circuit held that a court must consider the § 1404(a) factors, as well, rather than mechanically apply the first-to-file rule. ·518

F.3d 897, 904 (Fed.Cir.2008). In addition to the factors specifically listed in § 1404(a), the *Micron* court stated that "[a] district court may consider a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, ... the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Id.* at 904 (citing *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed.Cir.1993)).

9. In another case, the Seventh Circuit explained this practice in this way:
 In the case of a declaratory judgment action, [deference to the plaintiff's choice of

*Automation, Inc.*, 626 F.3d at 980 (citations omitted). Similarly, the *Research Automation* court also noted that "[c]ourts have also departed from a first-to-file rule where one party files its lawsuit in anticipation of an impending suit by the opposing party." *Id.* (citing *Schwarz v. National Van Lines, Inc.*, 317 F.Supp.2d 829, 833 (N.D.Ill.2004)). *See also Micron*, 518 F.3d at 904 ("district court may consider a party's intention to preempt another's infringement suit"); *Serco*, 51 F.3d at 1040 (court may consider declaratory judgment plaintiff's intent to preempt a patent infringement suit). Here, in finding that it has jurisdiction over this declaratory judgment action, the Court specifically found that Plaintiff filed this suit in response to an implicit threat to sue—the "sword of Damocles" unsheathed by Defendant. (Doc. 43). For these reasons, the order of filing carries less weight in this case than it ordinarily does in the Seventh Circuit.

Courts are always concerned about the prevention of pernicious forum-shopping, and must be cognizant of this issue when dealing with a motion to transfer. However, the Court notes that the Federal Circuit itself has held that "[t]he creation of [the Federal Circuit Court] has in large part tempered the impact of traditional forum shopping in patent cases," which reduces this Court's concern that Defendant was engaging in troublesome forum-shopping by filing its suit in Nevada. *Ser-*

*co Services Company, L.P. v. Kelley Company, Inc.*, 51 F.3d 1037, 1040 (Fed.Cir. 1995). Though Plaintiff accuses Defendant of engaging in forum-shopping by filing in Nevada, it does not explain what advantage Defendant thereby gains; because patent law is uniform across the nation, it should not matter for the outcome of this suit whether the issues are decided by this Court or the Nevada district court. Therefore, the Court does not believe that denial of a transfer in this case is necessary to curb an attempt at forum-shopping.

As the Court has already determined that the balancing of the convenience of the parties and witnesses with the interests of justice under § 1404(a) weigh in favor of transferring this matter to the Nevada court, and because the first-to-file "rule" is insignificant in this particular case under Seventh Circuit caselaw,[10] the fact that the instant suit was earlier filed does not work against transfer.

### CONCLUSION

In this case, the Court finds that the interests of justice, considered with the other 28 U.S.C. § 1404(a) factors, call for this matter to be transferred to the District of Nevada. For the foregoing reasons, Defendant's Motion for Transfer of Venue (Doc. 60) is GRANTED. The Clerk is directed to TRANSFER this matter to the United States District Court for the

---

forum] has less force: but for [the plaintiff's] preemptive filing in Illinois, this would be in all respects [the defendant's] suit, and he would have been entitled to file whenever he wanted, wherever he wanted. He is the "natural plaintiff"—the one who wishes to present a grievance for resolution by a court. We have expressed wariness at the prospect of "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural plaintiff.'"
*Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir.2002) (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th

Cir.1993); citing *Tempco Elec. Heater Corp. v. Omega Eng., Inc.*, 819 F.2d 746, 749–50 (7th Cir.1987)).

**10.** Moreover, as noted above, the Federal Circuit also recognizes that this "rule" can give way in where the § 1404(a) factors are more important, and that a court can give weight to a party's attempt to preempt a patent infringement suit via a declaratory judgment action, so it is not necessarily the case that the application of Seventh Circuit caselaw here controls the outcome; Federal Circuit law might have resulted in the same decision.

District of Nevada pursuant to 28 U.S.C. § 1404(a). IT IS SO ORDERED.